IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CR. NO.: <u>2:25-cr-357</u> |
| | ) | |
| | ) | **18 U.S.C. § 371** |
| **vs.** | ) | **18 U.S.C. § 666** |
| | ) | **18 U.S.C. § 1343** |
| | ) | **18 U.S.C. § 1346** |
| | ) | **18 U.S.C. § 981(a)(1)(C)** |
| **AARON CHARLES-LEE HICKS** | ) | **18 U.S.C. § 982(a)(2)(A)** |
| | ) | **28 U.S.C. § 2461(c)** |
| | ) | |
| | ) | **INFORMATION** |
| | ) | **(UNDER SEAL)** |
| | ) | |

BACKGROUND

1.     The Defendant, **AARON CHARLES-LEE HICKS**, is a resident of North Charleston, South Carolina.

2.     North Charleston is a municipality in South Carolina. From 2019 to 2024, North Charleston received over $10,000 in federal funds each fiscal year.

3.     The North Charleston City Council is the elected body clothed with the power and authority to make rules and pass ordinances in North Charleston. The North Charleston City Council is comprised of an at-large mayor and ten council members elected from single-member districts every four years. North Charleston City Council has the power and duty to:

   a.  exercise the corporate powers of the City of North Charleston;
   b.  consider and enact legislation;
   c.  set official city policy;
   d.  hold public hearings on matters concerning zoning and grant funds;
   e.  approve franchises, enact business license fees, and levy taxes;
   f.  adopt an annual budget; and
   g.  approve or disapprove requests for zoning.

The North Charleston City Council meets the first and third Thursday of every month.

1

4.      The Public Safety Committee is a committee of the North Charleston City Council comprised of all members of City Council. The Public Safety Committee meets the third Thursday of every month during regularly scheduled City Council meetings.

5.      Jerome Sydney Heyward ("Heyward"), charged elsewhere, is a resident of North Charleston, South Carolina. From January 2021 to the present, Heyward has served as a member of North Charleston City Council, representing District 5. In addition to serving as a North Charleston City Councilman, Heyward worked as a "consultant" and owned a consulting business, "Heyward Consulting."

6.      Mike A. Brown ("Mike Brown-1"),[1] charged elsewhere, is a resident of North Charleston, South Carolina. In 2015, Mike Brown-1 was elected to the North Charleston City Council, representing District One, and was reelected to that seat in 2019 and 2023. In addition to his position as a North Charleston City Councilman, Mike Brown-1 co-owned the Blue Note Bistro, a lounge in North Charleston. In March 2024, the Blue Note Bistro ceased operations.

7.      Sandino Moses ("Moses"), charged elsewhere, is a resident of North Charleston, South Carolina. In 2023, Moses was elected to the North Charleston City Council, representing District Four.

8.      At all times relevant to this Information, Heyward, Mike Brown-1, and Moses served as members of the North Charleston City Council. As members of the North Charleston City Council, Heyward, Mike Brown-1, and Moses are public officials subject to the provisions of South Carolina's Ethics Reform Act. *See* S.C. Code §§ 8-13-100 *et seq.*

---

[1]      There are presently three Michael Browns who serve as North Charleston Councilmembers. Mike A. Brown represents District One ("Mike Brown-1"). Mike Brown Jr. ("Mike Brown-7") represents District Seven and is Mike Brown-1's son. Michael Brown ("Michael Brown-10") represents District Ten and is unrelated to Mike Brown-1 and Mike Brown-7.

9.      Hason Tatorian Fields ("Fields"), charged elsewhere, is a resident of Goose Creek, South Carolina. Fields owns and operates HTF Consulting, LLC, an entity that provides consulting and lobbying services to businesses and individuals in South Carolina.

10.     Company A, known to the United States Attorney, is a boat manufacturing company located in Berkeley County, South Carolina.

11.     Company A is owned by Businessman A, known to the United States Attorney.

12.     In 2023, the Charleston County Parks & Recreation Commission ("CCPRC") accepted a proposal from Company A to grant a ninety-year lease on a tract of land in North Charleston, hereinafter the "Property."[2] The lease would allow Company A to build a boat manufacturing facility, clean up and remediate the property, and pay for a 46-acre public park. In April 2023, the North Charleston City Council, which has jurisdiction over the property, rezoned the site from general business and light industrial to single-family residential, putting Company A's plans on hold.

13.     In February 2024, on behalf of Company A, the CCPRC, as the technical owner of the Property, requested that the City of North Charleston re-zone the property to enable Company A to build the boat manufacturing plant.

14.     Anticipating strong community opposition to the proposed rezoning, Company A hired "lobbyists" and "consultants" to promote the project and assist their efforts in rezoning the Property. Company A engaged the Defendant **AARON CHARLES-LEE HICKS** and Fields in February 2024. **AARON CHARLES-LEE HICKS** and Fields were both paid by Company A. Company A agreed to pay Fields $30,000 upfront and $5,000 per month. Company A agreed to

---

[2]      The tract of land is in Charleston County and is known as the Baker Hospital Site, which formerly housed the Baker Hospital complex.

pay **AARON CHARLES-LEE HICKS** $10,000 for March 2024 and $10,000 for April 2024, and later agreed to pay **AARON CHARLES-LEE HICKS** $5,000 per month for May and June 2024.

15.    The rezoning application was scheduled to come before North Charleston City Council's Public Safety Committee for a first reading on April 18, 2024 during the regularly scheduled City Council meeting.

16.    Prior to the April 18th vote, it was unclear whether the rezoning proposal would pass. In and around early 2024, **AARON CHARLES-LEE HICKS** agreed to pay Heyward and Mike Brown-1 in exchange for their influence on North Charleston City Council and support of the rezoning application. It was part of the agreement that **AARON CHARLES-LEE HICKS** would pay Heyward and Mike Brown-1 kickbacks from a portion of the consulting fees he received from Company A.

17.    On April 16, 2024, FBI received court-authorization to intercept wire and electronic communications occurring over Heyward's cellular telephone. On April 17, FBI began intercepting Heyward's communications. FBI conducted two, 30-day periods of interceptions: from April 17 to May 16, 2024, and from June 6 to July 5, 2024.

18.    On April 18, 2024, Heyward and Mike Brown-1 discussed Company A's proposal and expressed concern that they did not have enough votes secured to advance CCPRC's zoning application, submitted on behalf of Company A.

19.    On April 18, 2024, at 10:41 a.m., Mike Brown-1 called Heyward and asked if he had spoken with a Company A employee. Mike Brown-1 then expressed frustration that Company A had not yet paid **AARON CHARLES-LEE HICKS**, indicating that he had hoped to receive money from **AARON CHARLES-LEE HICKS** to help his son with wedding expenses. In reference to the money he expected to receive from **AARON CHARLES-LEE HICKS** —money

belonging to Company A—Mike Brown-1 stated: "S***, this free money." Mike Brown-1 told Heyward to call Company A's employee to encourage them to pay **AARON CHARLES-LEE HICKS**, and Heyward agreed to do so.

20.    On or about April 18, 2024, at 11:31 a.m., Heyward received a call from **AARON CHARLES-LEE HICKS**. **AARON CHARLES-LEE HICKS** expressed frustration with Company A and their failure to pay him the second half his $10,000 consulting fee for the month of April. **AARON CHARLES-LEE HICKS** stated: "I've been trying to get that squared away before the vote happens tonight." Heyward and **AARON CHARLES-LEE HICKS** then discussed Heyward's previous call with Mike Brown-1 and Mike Brown-1's need for the money to help his son with wedding expenses. **AARON CHARLES-LEE HICKS** agreed to try to get the money from Company A in advance of the vote.

21.    On or about April 18, 2024, at 4:25 p.m.—an hour before the Public Safety meeting during which City Council was scheduled to vote on CCPRC's zoning application on behalf of Company A— **AARON CHARLES-LEE HICKS** called Heyward. During the call, **AARON CHARLES-LEE HICKS** told Heyward, "I was calling you earlier, before I go into work, wanted to let you know I had got your money." **AARON CHARLES-LEE HICKS** then told Heyward that he wanted to meet him before they entered North Charleston City Hall: "I ain't want nobody to see me talking once you had got here."

22.    On April 18, 2024—prior to the Public Safety Committee meeting—**AARON CHARLES-LEE HICKS** paid Heyward $2,500 and Mike Brown-1 at least $1,000 in cash.

23.    During the April 18, 2024 Public Safety Committee meeting, Moses made a motion to delay the vote by 30 days, and another councilmember seconded the motion.

24.     Following the vote to table the first reading at the April 18 Public Safety Committee meeting, the first reading was rescheduled for the City Council meeting on May 16, 2024.

25.     On April 26, 2024, Businessman A convened a meeting with **AARON CHARLES-LEE HICKS**, Fields, and several employees of Company A who are known to the United States Attorney at Company A's corporate headquarters in downtown Charleston, South Carolina. The purpose of the meeting was to coalesce around a plan to win support for the project, both on North Charleston City Council and in the community, before the May 16th City Council meeting.

26.     Unbeknownst to most of the attendees, the April 26th meeting at Company A's corporate headquarters was recorded. The recording was later provided to the Federal Bureau of Investigation ("FBI").

27.     At the beginning of the meeting, **AARON CHARLES-LEE HICKS** and Fields expressed that gaining the support of Moses and another City councilmember, who is known to the United States Attorney, were the keys to prevailing at the May 16th City Council meeting. Fields told the group that he believed Moses was experiencing personal financial difficulties at that time, and that "I know I can get him . . . ."

28.     Businessman A expressed skepticism that the approach before April 26, 2024— which involved mustering support in the community and ensuring that community members who were in favor of the project would speak in support of it at City Council meetings—would be successful.

29.     As the meeting continued, the group focused their discussion on how to persuade Moses and the other councilmember to vote in favor of the rezoning proposal. Fields expressed his

ability to successfully appeal to Moses and the other City councilmember and agreed to schedule meetings with them.

30.     While Fields agreed to meet with Moses and the other City councilmember, **AARON CHARLES-LEE HICKS** agreed to meet with community members and neighborhood groups to garner their support of the boat manufacturing project. **AARON CHARLES-LEE HICKS** expressed that community support was necessary to give City Councilmembers cover to vote in favor of the rezoning application.

31.     After the April 26th meeting, Fields contacted Moses to schedule a meeting. Prior to his election to North Charleston City Council, Moses did not know Fields. On May 4, 2024, Fields drove to Moses' residence where the two discussed Company A's proposal in general terms. Moses told Fields that he wanted to begin a career as a consultant.

32.     Fields told Moses about a purported consulting project he was working on that involved an effort to help local churches that were facing a property dispute. Fields asked Moses if he would be interested in helping Fields with the project. After Moses answered in the affirmative, Fields gave him $200 in cash and stated that he would provide details at a later date.

33.     On May 7, 2024, Moses and Fields agreed to meet at a local restaurant to discuss issues, including Company A's proposal. On this date, Fields paid Moses an additional $250 in cash. Moses asked for more details about the purported consulting project, but Fields did not offer additional information.

34.     Moses left concerned that the cash was not an offer to assist with a consulting project but was instead a bribe in exchange for his support for Company A's proposal and for his vote in favor of the rezoning application.

35.     In and around the time that Moses and Fields were meeting to discuss Company A's proposal, the FBI was conducting its court-authorized interception of Heyward's cellular telephone. On May 15, 2024, 9:51am the FBI intercepted a call between **AARON CHARLES-LEE HICKS** and Heyward that involved a discussion about Fields and Moses. After telling Heyward that Moses supported the project, **AARON CHARLES-LEE HICKS** stated, "Yeah, cause I think they had slide him something."

36.     Later on May 15, 2024, the FBI intercepted a telephone call between Heyward and Moses. **AARON CHARLES-LEE HICKS** was surreptitiously listening to the telephone conversation. Moses stated that he told Fields that in exchange for his support for the project, Moses wanted Fields to "make something happen" and to "give me some money for my district."

37.     Heyward counseled Moses that directly asking for something in exchange for his vote amounted to a "quid pro quo" and was illegal. Heyward counseled that the preferred approach was to vote in favor of Company A's proposal, and then "tell [Businessman A] what you want after the vote is passed." Heyward further counseled that although Moses could communicate with Businessman A, that any such requests should be routed through intermediaries like **AARON CHARLES-LEE HICKS**, Fields, or a Company A employee.

38.     Specifically, Heyward told Moses, "You can talk to [Businessman A] but don't, I wouldn't talk to him about no deals. No, no, no I can't-I don't want to talk about no deals. You can talk to Fields about a deal. You can talk to his right-hand man [Company A employee] about a deal. You can talk to anyone in there. I wouldn't talk to [Businessman A] because it's his money. I wouldn't talk to him about it. You can talk to Hicks, say, look man I need, I need this done in my district. I'm going to support it [Businessman A] but after this, after the vote clears on this project, I want this done in my district."

8

39.     Moses thanked Heyward and stated, "Let's say I didn't talk to you tonight, right? I was lead in the wrong direction here. But what you're telling me now? I should have heard this last week from the person I was talking to. They told me something like you telling me now? It makes sense and sounds right. I just, he talked to me last week? About my love for the district and trying to do anything I can do for them. That's the only thing setting me in that way. But it's a green light if I can get that. But no one explain it to me like that. So, if I hadn't talk to you tonight, I wouldn't have known nothing about this. I would have known nothing. You hadn't call me tonight, person I talked to would have led me astray. Like full blown astray. You know what I'm saying? That's, that you know, that ain't cool." Moses was referring to his conversations and dealings with Fields in the days prior to the May 15, 2024 conversation with Heyward.

40.     On May 15, 2024, about an hour after the conversation with Heyward about a "quid pro quo", Moses and Fields met at the same restaurant where the two met on May 7, 2024. Moses recognized Fields' payments as bribe payments in exchange for his support of the rezoning application in favor of Company A. Moses returned the $450 in cash to Fields.

41.     After receiving the second payment on May 7, 2024, but before returning the payment to Fields on May 15, 2024, Moses knew that the purpose of Fields' payments was a bribe in exchange for Moses' support of Company A's proposal and official action with respect to the rezoning application, not an agreement to consult on a project to benefit local churches.

42.     In the hours leading up to City Council's vote on the rezoning application, **AARON CHARLES-LEE HICKS**, Mike Brown-1, and Heyward expressed concerns about whether they had sufficient support in favor of the rezoning application. On May 16, 2024, **AARON CHARLES-LEE HICKS** and Heyward discussed that the rezoning application likely would not pass. However, they both wanted to continue to advance the construction of the boat manufacturing

plant for their own personal enrichment. Heyward suggested that they look for alternative locations to construct the plant. **AARON CHARLES-LEE HICKS** then said, "Let me ask you this, Jerome. This is how we eat on the back side in my mind, if we able to pull that off, . . . and I keep that deal with [Company A] like I work that out, he keeps me on board and then I set my price, we continue to eat, right?"

43.     On May 16, 2024, CCPRC withdrew its rezoning application, on behalf of Company A, prior to the Public Safety Committee meeting because they learned that they did not have the necessary support on City Council.

44.     **AARON CHARLES-LEE HICKS** and Fields continued to collect fees from Company A after CCPRC withdrew the application. On June 5, 2024, **AARON CHARLES-LEE HICKS** and Fields each accepted $5,000 from Company A via check.

45.     On June 17, 2024, an FBI Special Agent approached Fields and asked if he had any knowledge of payments made on behalf of Company A for its rezoning application. Fields denied having any knowledge of payments made to North Charleston City Councilmembers on behalf of Company A.

46.     On June 18, 2024, after being approached by an FBI Special Agent, Fields texted Moses a photograph of a document that appears to be an agenda. On June 27, 2024, Fields texted Moses about working on behalf of the churches. Fields communications with Moses after being approached by the FBI were an attempt to coverup the bribe payments.

## COUNT 1
**Conspiracy to Commit Bribery with Respect to Programs Receiving
Federal Funds and Honest Services Wire Fraud, 18 U.S.C. Section 371**

47.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 46 of this Information as if fully set forth herein:

48.     Beginning in or around Spring 2024 and continuing until in or around June 2024, in the District of South Carolina and elsewhere, the Defendant **AARON CHARLES-LEE HICKS**, and others both known and unknown to the United States Attorney, did knowingly and willfully conspire and agree together and with each other, to commit the following offenses against the United States:

a.  **Bribery and Kickbacks Concerning Programs Receiving Federal Funds**: that is, for the Defendant **AARON CHARLES-LEE HICKS**, aided and abetted by others known and unknown to the United State Attorney, to corruptly give, offer, and agree to give anything of value to Jerome Heyward and Mike Brown-1, charged elsewhere, agents of North Charleston, a City which during the relevant one-year period received federal benefits in excess of $10,000, intending to influence and reward Jerome Heyward and Mike Brown-1 in connection with a transaction, and a series of transactions of the City of North Charleston involving anything of value of $5,000 or more; that is, the rezoning of the Property in North Charleston for the purpose of constructing a boat manufacturing plant, in violation of Title 18, United States Code, Sections 666(a)(2)b (b) and 2; and

b.  **Honest Services Wire Fraud**: that is, for the Defendant **AARON CHARLES-LEE HICKS**, and others known and unknown to the United States Attorney, to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of North

Charleston and the government of the City of North Charleston of their right to the honest and faithful services of Jerome Sydney Heyward and Mike-Brown 1, North Charleston City Councilmembers, through bribery and kickbacks, in violation of Title 18, United States Code, Sections 1343 and 1346.

Purposes of the Conspiracy

49.     It was a purpose of the conspiracy for the Defendant **AARON CHARLES-LEE HICKS**, Jerome Sydney Heyward, and Mike Brown-1 to enrich themselves by exploiting Jerome Sydney Heyward's and Mike Brown-1's official positions as North Charleston City Councilmembers to obtain bribes and kickbacks from **AARON CHARLES-LEE HICKS** in exchange for their influence on North Charleston City Council and support of the rezoning of the Property.

50.     It was a further purpose of the conspiracy for **AARON CHARLES-LEE HICKS** to successfully lobby and consult for and on behalf of Company A and the rezoning of the Property by corruptly enriching Jerome Sydney Heyward and Mike Brown-1, to further enrich himself in the future.

51.     It was a further purpose of the conspiracy for **AARON CHARLES-LEE HICKS**, Jerome Sydney Heyward, and Mike Brown-1 to conceal their corrupt scheme from other North Charleston City Councilmembers and the citizens of North Charleston.

Manner and Means of the Conspiracy

52.     The manner and means of the conspiracy included, but were not limited to, the following:

53.     In the Fall of 2023, **AARON CHARLES-LEE HICKS** pursued "lobbying" and/or "consulting" opportunities for Company A. In February 2024, Company A retained **AARON**

**CHARLES-LEE HICKS** as a "lobbyist" and/or "consultant" to advocate on behalf of Company A and the rezoning of the Property for the construction of a boat manufacturing plant.

54.     Beginning in or around March and April 2024, Heyward and Mike Brown-1 agreed with **AARON CHARLES-LEE HICKS** to use their positions as North Charleston City Councilmembers to support the rezoning of the Property, influence other City Councilmembers to support the rezoning of the Property, and vote to approve CCPRC's rezoning application. In exchange, **AARON CHARLES-LEE HICKS** agreed to kick back a portion of the consulting and/or lobbying fees he received from Company A to Heyward and Mike-Brown 1.

55.     On February 26, 2024, **AARON CHARLES-LEE HICKS** received $10,000 from Company A via check. **AARON CHARLES-LEE HICKS** cashed the check and gave $2,500 in cash to Heyward.

56.     On April 18, 2024, **AARON CHARLES-LEE HICKS** received $5,000 from Company A via check. On April 18, 2024, **AARON CHARLES-LEE HICKS** cashed the $5,000 check and gave $2,500 in cash to Heyward and at least $1,000 in cash to Mike Brown-1.

57.     Beginning in and around February 2024 and continuing to at least in or around June 2024, Heyward and Mike Brown-1, being agents and representatives of the City of North Charleston, advocated for the construction of Company A's boat manufacturing plant and the rezoning of the Property and pressured other councilmembers to vote to approve the rezoning application.

58.     Heyward and Mike Brown-1 never disclosed their agreement with **AARON CHARLES-LEE HICKS** or that they accepted money from **AARON CHARLES-LEE HICKS**, working on behalf of Company A, in exchange for their influence on North Charleston City Council and support of the rezoning of the Property. Heyward and Mike Brown-1 took steps to

conceal material information about their relationship to **AARON CHARLES-LEE HICKS** and other individuals associated with and working on behalf of Company A from the citizens of North Charleston and their fellow Councilmembers.

Overt Acts in Furtherance of the Conspiracy

59.     In furtherance of the conspiracy, and to achieve its purposes, **AARON CHARLES-LEE HICKS**, Heyward, and Mike Brown-1, and others known and unknown to the United States Attorney, committed the following overt acts, among others, in the District of South Carolina and elsewhere:

60.     On or about February 26, 2024, **AARON CHARLES-LEE HICKS** received $10,000 from Company A.

61.     On or about April 2, 2024, **AARON CHARLES-LEE HICKS** received $5,000 from Company A.

62.     On or about April 18, 2024, Mike Brown-1 told Heyward to call Company A's employee to pressure and/or encourage them to pay **AARON CHARLES-LEE HICKS**.

63.     On or about April 18, 2024, **AARON CHARLES-LEE HICKS** received $5,000 from Company A.

64.     On or about May 3, 2024, **AARON CHARLES-LEE HICKS** received $5,000 from Company A via check.

65.     On or about May 15, 2024, Heyward called Moses to pressure him to vote to approve the rezoning application.

66.     On or about June 5, 2024, **AARON CHARLES-LEE HICKS** received $5,000 from Company A via check.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Bribery with Respect to Programs Receiving Federal Funds,
### Title 18 U.S.C. Sections 666(a)(2) and (b) and 2

67.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 66 of this Information as if fully set forth herein:

68.     Beginning in or about February 2024 and continuing until in or about June 2024, in the District of South Carolina and elsewhere, the Defendant, **AARON CHARLES-LEE HICKS**, aided and abetted by others known and unknown to the United States Attorney, did corruptly give, offer, and agree to give things of value to Jerome Sydney Heyward and Mike Brown-1, agents of North Charleston, a City which during the relevant one-year period received federal benefits in excess of $10,000, intending to influence and reward Jerome Heyward and Mike Brown-1 in connection with a business, transaction and series of transactions involving $5,000 or more, that is, the rezoning of Properties Addressed as 2349 and 2381 Baker Hospital Boulevard and 2750 Speissegger Drive in Charleston County;

All in violation of Title 18, United States Code, Section 666(a)(2) and (b) and 2.

## COUNT 3
### Honest Services Wire Fraud, 18 U.S.C. Sections 1343, 1346 and 2

69.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 66 of this Information as if fully set forth herein:

70.     As set forth above, beginning in or around February 2024 and continuing until in or around June 2024, in the District of South Carolina and elsewhere, the Defendant **AARON CHARLES-LEE HICKS**, and others known and unknown to the United States Attorney, knowingly devised and intended to devise a scheme and artifice to defraud and deprive the citizens of North Charleston, South Carolina and the government of North Charleston of their intangible

15

right to the honest services of a public office, namely the honest services of Jerome Sydney Heyward and Mike Brown-1 and other North Charleston City councilmembers, through bribery and kickbacks.

71.     On or about April 18, 2024, in the District of South Carolina and elsewhere, the Defendant **AARON CHARLES-LEE HICKS**, aided and abetted by others both known and unknown to the United States Attorney, having devised the above-described scheme and artifice to defraud and deprive by means of materially false and fraudulent pretenses, representations, and promises, and the omission of material information, and for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds, that is, a $5,000 check to **AARON CHARLES-LEE HICKS** from Company A;

All in violation of Title 18, United States Codes, Sections 1343, 1346, and 2.

### COUNT 4
**Conspiracy to Commit Bribery with Respect to Programs Receiving
Federal Funds and Honest Services Wire Fraud, 18 U.S.C. Section 371**

72.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 46 of this Information as if fully set forth herein:

73.     Beginning in or around Spring 2024 and continuing until in or around June 2024, in the District of South Carolina and elsewhere, the Defendant **AARON CHARLES-LEE HICKS**, and others both known and unknown to the United States Attorney, did knowingly and willfully conspire and agree together and with each other, to commit the following offenses against the United States:

    a.  **Bribery and Kickbacks Concerning Programs Receiving Federal Funds**: that is,
        for Hason Tatorian Fields, charged elsewhere, aided and abetted by **AARON**

**CHARLES-LEE HICKS** and others known and unknown to the United State Attorney, to corruptly give, offer, and agree to give anything of value to Sandino Moses, charged elsewhere, an agent of North Charleston, a City which during the relevant one-year period received federal benefits in excess of $10,000, intending to influence and reward Sandino Moses in connection with a transaction, and a series of transactions of the City of North Charleston involving anything of value of $5,000 of more; that is, the rezoning of the Property in North Charleston for the purpose of constructing a boat manufacturing plant, in violation of Title 18, United States Code, Sections 666(a)(2), (b) and 2; and

b. **Honest Services Wire Fraud**: that is, for the Defendant **AARON CHARLES-LEE HICKS**, Hason Tatorian Fields, and others known and unknown to the United States Attorney, to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of North Charleston and the government of the City of North Charleston of their right to the honest and faithful services of Sandino Moses, a North Charleston City Councilmember, through bribery, in violation of Title 18, United States Code, Sections 1343 and 1346.

<u>Purposes of the Conspiracy</u>

74.    It was a purpose of the conspiracy for **AARON CHARLES-LEE HICKS**, Hason Tatorian Fields, and others to enrich themselves through bribery.

75.    It was a further purpose of the conspiracy to successfully lobby North Charleston City Councilmembers to vote in favor of the rezoning application, thereby allowing Company A to build a boat manufacturing plant on the Property.

76. It was a further purpose of the conspiracy to garner community support in favor of the rezoning application.

<u>Manner and Means of the Conspiracy</u>

77. The manner and means of the conspiracy included, but were not limited to, the following:

78. On April 26, 2024, **AARON CHARLES-LEE HICKS** and Hason Tatorian Fields met with Businessman A and other employees of Company A to discuss a plan to win support for the Project on North Charleston City Council and in the community.

79. During the April 26th meeting, Fields articulated his ability to successfully appeal to Moses and another North Charleston City councilmember to obtain their support of the rezoning application. Fields agreed to schedule meetings with Moses and another City councilmember.

80. During the April 26th meeting, **AARON CHARLES-LEE HICKS** agreed to connect with members of the community and other groups to garner additional community support of the rezoning application. **AARON CHARLES-LEE HICKS** sought to obtain community support of the project to provide City councilmembers necessary cover to vote in favor of the rezoning application.

81. After the April 26th meeting, Fields contacted Moses and scheduled a meeting. On May 4, 2024, Fields drove to Moses' residence and paid Moses $200 under the guise of seeking Moses' assistance with a consulting project involving local churches.

82. On May 7, 2024, Moses and Fields agreed to meet at a local restaurant to discuss issues, including Company A's proposal. On this date, Fields paid Moses an additional $250 in cash.

Overt Acts in Furtherance of the Conspiracy

83.     In furtherance of the conspiracy, and to achieve its purposes, **AARON CHARLES-LEE HICKS**, Fields, and others known and unknown to the United States Attorney, committed the following overt acts, among others, in the District of South Carolina and elsewhere:

84.     On or about May 3, 2024, **AARON CHARLES-LEE HICKS** received $5,000 from Company A via check.

85.     On May 4, 2024, Fields contacted Moses to set up a meeting.

86.     On May 7, 2024, Fields met with Moses to discuss issues, including Company A's proposal.

87.     On or about May 15, 2024, Heyward called Moses, while **AARON CHARLES-LEE HICKS** was on the phone, to pressure him to vote to approve the rezoning application.

88.     On or about June 5, 2024, Fields received $5,000 from Company A via check.

89.     On or about June 5, 2024, **AARON CHARLES-LEE HICKS** received $5,000 from Company A via check.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE**

BRIBERY/FRAUD:

Upon conviction for violation of Title 18, United States Code, Sections 371, 666 and 1343 as charged in this Information, the Defendant, **AARON CHARLES-LEE HICKS**, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained, directly or indirectly, as a result of such offenses.

PROPERTY:

Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A), and 28 U.S.C. § 2461(c), the property which is subject to forfeiture for the violations charged in this Information includes, but is not limited to, the following:

> Cash Proceeds / Forfeiture Judgment:
>
> A sum of money equal to all proceeds the Defendant obtained, directly or indirectly, from the offenses charged in this Information, and all interest and proceeds traceable thereto, and/or such sum that equals all property derived from or traceable to his violation of 18 U.S.C. §§ 371, 666 and 1343.

SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture to the United States, as a result of any act or omission of the Defendant,

> (1)    Cannot be located upon the exercise of due diligence;
>
> (2)    Has been transferred or sold to, or deposited with a third party;
>
> (3)    Has been placed beyond the jurisdiction of the Court;
>
> (4)    Has been substantially diminished in value; or

(5)     Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), [incorporating Title 21, United States Code, Section 853(p)], to seek forfeiture of any other property of the said Defendant up to the value of the above forfeitable property.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

BROOK B. ANDREWS
ACTING UNITED STATES ATTORNEY

By:

Emily Evans Limehouse (Fed. ID #12300)
Whit Sowards (Fed. ID # 11844)
Assistant United States Attorneys
151 Meeting Street, Suite 200
Charleston, SC 29401
Tel.:   (843) 727-4381
Fax:   (843) 727-4443
Email: Emily.Limehouse@usdoj.gov